## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JORDAN HICKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-5113** |
| **TIM HOOPER, WARDEN** | **SECTION "B"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* **28 U.S.C. § 2254(e)(2)**.[1]

## I.    Factual and Procedural Background

Petitioner Jordan Hicks ("Hicks") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On April 25, 2013, Hicks and co-defendant Ernest L. Payne, Jr., were indicted by a Jefferson Parish Grand Jury for two counts of second degree murder.[3] Hicks entered a plea of not guilty on May 29, 2013.[4]

The facts as determined at the joint trial of both defendants reflect that, on August 12, 2012, Jefferson Parish Deputy Christopher Lewis was patrolling near LaPalco Boulevard and Betty

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] ECF No. 1, Petition. The State Court Record was electronically filed by the State at ECF No. 9 in parts Nos. 9-1 through 9-7.

[3] ECF No. 9-1 at 1, Superseding Indictment, 4/25/13; *id*. at 2, Grand Jury Return, 4/25/13; *see also*, *id*. at 4, Indictment, 4/11/13; *id*. at 5, Grand Jury Return, 4/11/13.

[4] *Id*. at 16, Min. Entry, 5/29/13.

Street because of a block party in the area.[5]  At some point, he was notified of a shooting in the area near the intersection of Julie Street and Second Zion Avenue.  As he approached the intersection, he saw a car riddled with bullet holes.  He discovered two black males in the vehicle, both suffering from apparent gunshot wounds.  The man in the passenger's seat, Delanta McCall a/k/a Dig, was dead.  He was armed with a Glock pistol, and his finger was still on the trigger. The man in the driver's seat, Martin Harry a/k/a Marty, was still semi-conscious and holding a rifle.  Harry was later declared deceased at the hospital.

Witnesses, including Kira Carter, advised Deputy Lewis that a white pick-up truck had sped away from the scene moments before he arrived.  Just before the shooting, Carter was on the front porch of her home on Julie Street with her friends, Conekia Phillips, Kevineka Clay, and Carrie Cosgrove, and their children.  When she walked to her car, Carter was approached by a man (later identified as co-defendant Payne) who arrived driving a white truck.  She ignored the man and what he was saying, as she saw two other vehicles pull up near the stop sign on the corner by her home.  She heard the people in the two vehicles exchange words with the women on the porch.

The lead car was driven by Jacobee Goff, a friend of the victims.  The second car was that of the victims, Harry and McCall, with Nakia Williams in the backseat.  When they stopped at the stop sign at the intersection of Second Zion Avenue and Julie Streets, Goff rolled down his window, and asked the women on the porch for "Lil Kevin."  Suddenly, both Carter and Goff heard gunshots coming from near the white truck.  Harry tried to drive off but Goff's car was blocking him.  At that time, Williams saw someone approach on the driver's side and shoot at

---

[5] The facts are taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal of co-defendant Payne.  *State v. Payne*, 258 So. 3d 1015, 1016-18 (La. App. 5th Cir. 2018).  The court did not provide a factual summary in its opinion issued in Hicks's direct appeal.

Harry's car.  Williams also saw Payne standing near his white truck and other people shooting from the back of the truck.  Williams ducked down in the back seat and eventually got out of Harry's car and ran to his aunt's house on the next street.  When Williams later spoke with detectives, he identified Hicks as one of the shooters and Payne as being near the white truck.

About a month after the shooting, Sergeant Travis Eserman, a detective with the Jefferson Parish Sheriff's Office, showed Carter a photographic lineup from which she was able to narrow an identification to two men, one of which was co-defendant Payne.

Hicks and Payne were jointly tried before a jury on May 17 through 19, 2017.[6]  Hicks was found guilty as charged on both counts, and Payne was found guilty of two counts of manslaughter.[7]  On June 2, 2017, Hicks' trial counsel filed a motion for new trial arguing that the verdict was contrary to the law and evidence and that the state trial court breached Hicks's right to counsel of his choice when the court did not grant a continuance for private counsel to enroll.[8]  At a hearing held June 7, 2017, the state trial court denied the motion as meritless.[9]  During the hearing, Hicks waived legal delays, and the state trial court sentenced him on each count to serve life in prison without benefit of parole, probation, or suspension of sentence.[10]

---

[6] ECF No. 9-1 at 150, Trial Mins., 5/15/17; *id*. at 154-55, Trial Mins., 5/16/17; *id*. at 156-57, Trial Mins., 5/17/17; *id*. at 162-63, Trial Mins., 5/18/17; *id*. at 264, *Nunc Pro Tunc* 5/19/17 Trial Mins., 7/26/17; *id*. at 366; ECF No. 9-4 at 137-250, Trial Tr., 5/17/17; *id*. at 251-552, Trial Tr., 5/18/17; ECF No. 9-5 at 1-121, Trial Tr., Vol. I, 5/19/17; *id*. at 122-60, Trial Tr., Vol. II, 5/19/17; *id*. at 301-460, Trial Tr., Voir Dire Jury Panel 1 pp. 1-160, 5/16/17; ECF No. 9-6 at 1-101, Trial Tr., Voir Dire Jury Panel 1 pp. 161-261, 5/16/17; *id*. at 102-307, Trial Tr., Voir Dire Jury Panel 2, 5/16/17; *id*. at 308-424, Trial Tr., Voir Dire Jury Panel 3, 5/17/17; *id*. at 425-463, Trial Tr., Opening Statements, 5/17/17; ECF No. 9-7 at 1-52, Trial Tr., Closing Arguments, 5/19/21.

[7] ECF No. 9-1 at 265, *Nunc Pro Tunc* 5/19/17 Trial Mins., 7/26/17; *id*. at 169, Jury Verdict (Count 1), 5/19/17; *id*. at 171, Jury Verdict (Count 2), 5/19/17; *see also Payne*, 258 So. 3d at 1018.  Payne was eventually sentenced as a second felony offender to serve 40 years in prison on each count without benefit of probation or suspension of sentence.  *Id*.

[8] ECF No. 9-1 at 235, Motion for New Trial, 6/2/17.

[9] ECF No. 9-1 at 244, *Nunc Pro Tunc* 6/7/17 Sentencing Mins., 6/8/17; ECF No. 9-5 at 172-73, Sentencing Tr., 6/7/17.

[10] ECF No. 9-1 at 244, *Nunc Pro Tunc* 6/7/17 Sentencing Mins., 6/8/17; ECF No. 9-5 at 182-85, Sentencing Tr., 6/7/17.

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Hicks' appointed counsel asserted three errors:[11] (1) the state trial court erred by denying the motion for new trial which was based on denial of counsel of choice; (2) the state trial court erred by denying Hicks's right to proceed to trial with counsel of his choosing; and (3) the state trial court erred by denying Hicks's retained attorney's request for a continuance so he could proceed to represent his client. Hicks moved for and was granted leave to file a *pro se* supplemental brief, but he never filed one.[12]

On October 17, 2018, the Louisiana Fifth Circuit affirmed Hicks's convictions and sentences finding no merit in the claims.[13] The Louisiana Supreme Court also denied Hicks's related writ application without stated reasons on April 15, 2019.[14] Hicks's conviction was final 90 days later, on Monday, July 15, 2019,[15] because he did not file for review with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On July 8, 2020, Hicks through current retained counsel filed in the state trial court an application for post-conviction relief in which he asserted four claims labeled as follows:[16] (1) general averments (*i.e.* other meritorious claims exist that will need to be amended into the

---

[11] ECF No. 9-5 at 203, Appeal Brief, 2017-KA-0419, 10/10/17.

[12] *Id.* at 215, Request to File Pro Se Brief, 17-KA-419, 10/13/17; *id.* at 216, 5th Cir. Order, 17-KA-419, 10/13/17.

[13] *State v. Hicks*, 258 So. 3d 1031 (La. App. 5th Cir. 2018); ECF No. 9-5 at 257, 262-67, 5th Cir. Opinion, 17-KA-419, 10/17/18.

[14] *State v. Hicks*, 267 So. 3d 1122 (La. 2018); ECF No. 9-7 at 192, La. Sup. Ct. Order, 2018-KO-1918, 4/15/19; *id*. at 170, La. Sup. Ct. Writ Application, 18-KO-1918, 11/9/18.

[15] The State erred in representing July 14, 2019, as a "Tuesday." *See* ECF No. 8 at 3 n.2, State's Response. The thirtieth day was *Sunday*, July 14, 2019, causing the final day of the period fell to the next business day, Monday, July 15, 2019. *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6(a)(1)(C).

[16] ECF No. 9-1 at 344, Application for Post-Conviction Relief, 7/8/20; *see also id*. at 408, Trial Court Order, 7/13/20 (ordering briefing by the State).

application[17]); (2) ineffective assistance and abandonment of trial counsel (conceding that he had no challenge to the performance of his appointed trial counsel) when attorney Regan accepted payment to represent him but failed to appear at trial[18]); (3) ineffective appellate counsel and insufficiency of the evidence (appellate counsel should have asserted insufficient evidence and he should not be barred from doing so on post-conviction review because the claim has merit[19]); and (4) non-unanimous jury verdict (based on Hicks's belief and urged while awaiting the unsealing of the jury polling[20]).  On August 20, 2020, counsel supplemented the application with an affidavit from Hicks's mother, Terrie Hicks, related to the claim that the family retained attorney Regan prior to trial.[21]

On November 17, 2020, Hicks's counsel filed a second supplement to the application asserting a fifth claim for review, and the affidavit of Darlene Hicks, challenging the prosecutions use and the admissibility of her pretrial statement and trial testimony during which she claims she was under the influence of drugs.[22]  Hicks's counsel argued that the prosecution "stag[ed] an impeachment" of Darlene Hicks, who claimed a lapse of memory, for the sole purpose of creating a hearsay exception to admit her pretrial statements made to police which provided inculpatory information about both defendants.[23]

---

[17] *Id*. at 352, Memorandum in Support, 7/8/20.
[18] *Id*. at 354.
[19] *Id*. at 356.
[20] *Id*. at 360.
[21] *Id*. at 439-443, First Suppl. to Application, 8/20/20; ECF No. 9-2 at 2, Affidavit of Terrie Hicks, 8/5/20; *see also id*. at 4, Trial Court Order, 9/8/20 (ordering the supplement filed and briefing by the State).
[22] *Id*. at 31, Second Suppl. to Application, 11/17/20; *id*. at 38, Affidavit of Darlene Hicks, 10/26/20; *see also id*. at 47, Trial Court Order, 11/30/20 (ordering briefing by the State).
[23] *Id*. at 33-34.

After receiving the State's opposition response, on March 9, 2021, the state trial court denied Hicks's application.[24]  On the first claim, the court found that it failed to comply with the procedural requirements for stating claims pursuant to La. Code Crim. P. art 926, and otherwise "[t]he vague, conclusory, and entirely unsupported allegations" failed to meet the burden of proof under La. Code Crim. P. art 930.2.[25]

The court found the second claim repetitive of matters addressed on appeal and barred from further review under La. Code Crim. P. art. 930.4(A).  The court also barred review of any new allegations associated therewith that could have been raised sooner under La. Code Crim. P. art. 930.4(B).[26]

On the third claim, the court found that Hicks failed to establish ineffective assistance of appellate counsel.[27]  The court also found that Hicks's underlying claim of insufficient evidence was barred from review pursuant to La. Code Crim. P. art. 930.4(C), because it was not raised on direct appeal.[28]  In addition, the claim was without merit under *Jackson v. Virginia*, 443 U.S. 307 (1979).[29]

The court also denied Hicks's fourth claim because *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), did not apply retroactively on collateral review to final convictions, and more importantly, the verdict in Hicks's case was in fact unanimous.[30]

---

[24] *Id*. at 132-34, "Superceding" Trial Court Order, 3/17/21; *id*. at 118-20, Trial Court Order, 3/9/21; *id*. at 77-113, State's Response, 3/2/21.
[25] *Id*. at 132-33.
[26] *Id*. at 133.
[27] *Id*.
[28] *Id*. at 134.
[29] *Id*. at 133-34.
[30] *Id*. at 134.

As for Hicks's supplemental fifth claim, the court held the claim of prosecutorial misconduct was procedurally barred pursuant to La. Code Crim. P. art. 930.4(B), because the basis for the alleged misconduct was known at the time of the trial and appeal.[31]  In addition, the court found the claim meritless, because La. Code Evid. art. 801(D)(1) allowed use of prior inconsistent statements at trial as substantive evidence of guilt, noting that the cases relied on by Hicks predated relevant amendments to the hearsay rule.

Hicks through counsel sought review of that ruling in a writ application to the Louisiana Fifth Circuit in which he asserted only three claims: (1) petitioner's retained private counsel (Regan) acted ineffectively when he completely abandoned petitioner at trial; (2) petitioner's appellate counsel was ineffective (for failing to assert a claim of insufficient evidence); and (3) the State's knowing use of a drug-addicted witness Darlene Hicks, who testified under the influence of narcotics, violated petitioner's due process rights.[32]

On May 26, 2021, the Louisiana Fifth Circuit denied the writ application.[33]  The Court agreed that Hicks's claims regarding attorney Regan were procedurally barred from further review pursuant to La. Code Crim. P. art. 930.4(A).[34]  Alternatively, the court held that Hicks failed to meet his burden under *Strickland v. Washington*, 466 U.S. 668 (1984), of proving prejudice as a result of Regan's failure to enroll and had asserted no claim of deficient performance by his appointed trial counsel.[35]

---

[31] *Id.*
[32] ECF No. 9-7 at 60, 5th Cir. Writ Application, 21-KH-217, 5/10/21.
[33] *Id.* at 166-68, 5th Cir. Order, 21-KH-217, 5/26/21.
[34] *Id.* at 167.
[35] *Id.*

Similarly, the court held that Hicks failed to meet his burden of establishing deficient performance by his appellate counsel under *Strickland* and related state case law. The court noted that it would have as a matter of course reviewed the sufficiency of the evidence during its appellate review and in light of the ruling, found no basis for reversal. As such, the Court resolved, Hicks could not establish that he was prejudiced by counsel's failure to assert the claim. The court also commented that Hicks could have raised the claim himself but he failed to file a brief despite being granted leave to file.

Finally, the court agreed with the trial court's conclusion that Hicks's prosecutorial misconduct claim related to Darlene Hicks was procedurally barred pursuant to La. Code Crim. P. art. 930.4(B), and was otherwise without merit under La. Code Evid. art. 801(D)(1)(a) as an exception to the hearsay rule, noting that there was additional corroborating evidence citing *State v. Brown*, 80 So. 3d 547, 559 (La. App. 5th Cir. 2011).[36]

On December 6, 2022, the Louisiana Supreme Court denied Hicks's counsel-filed writ application because of Hicks' failure to meet his burden under *Strickland* on the ineffective assistance of counsel claims and, as to his other claims, failure to meet his burden under La. Code Crim. P. art. 930.2 and/or the claims were repetitive under La. Code Crim. P. art. 930.4.[37]

## II.    Federal Petition

On December 7, 2022, Hicks through same counsel filed a federal petition for habeas corpus relief in which he asserted the following grounds for relief:[38] (1) petitioner's Sixth Amendment right to counsel was violated by the ineffective assistance and complete abandonment

---

[36] *Id.* at 167-68.
[37] *Hicks v. State*, 350 So. 3d 861 (La. 2022); ECF No. 9-7 at 328-29, La. Sup. Ct. Order, 2021-KP-00904, 12/6/22; *see also*, *id.* at 193-208, La. Sup. Ct. Writ Application, 2021-KP-009, 6/25/21.
[38] ECF No. 1-1 at 3, Memorandum in Support.

of counsel by attorney Regan; (2) petitioner's Sixth Amendment right to counsel on direct appeal was violated by counsel's failure to raise an insufficient evidence claim; and (3) petitioner's Fifth Amendment rights were violated when the State knowingly used drug-addicted Darlene Hicks as a witness who testified under the influence of narcotics.

The State filed a response in opposition to Hicks's petition asserting that the petition was timely filed and that Hicks failed properly to exhaust his third claim, which must now be considered technically exhausted and defaulted, and otherwise barred from review based on the procedural bar imposed by the state courts.[39]  The State further argues that because Hicks claims lack merit, including the third claim in the alternative, the denial of relief by the state courts was not contrary to or an unreasonable application of federal law.[40]

In his counsel-filed reply to the State's opposition memorandum, Hicks argues that he has exhausted state court review of his claims because he sufficiently asserted the prosecutorial misconduct as a constitutional claim in the state courts.[41]  He also contends that the state courts denied his claims on the merits and not on procedural grounds as suggested by the State.  Hicks further reasserted summaries of his arguments in support of the merits of his three claims.[42]

## III.  <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[43] applies to Hicks's petition filed by his counsel on December 7, 2022.  The

---

[39] ECF No. 8 at 4, 36-42, State's Response.

[40] *Id*. at 8-48.

[41] ECF No. 12 at 2-5, Petitioner's Reply.

[42] *Id*. at 5-8.

[43] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

While timeliness is not at issue, the State here argues that Hicks's prosecutorial misconduct claim was not properly exhausted because he it was before the state courts as an evidentiary question, not a federal constitutional one.  As a result, the State contends the claim is now in procedural default because of Hicks's inability to return to the state courts to complete proper exhaustion.  In addition, the State urges that the claim is also in procedural default because the Louisiana Supreme Court recognized the repetitive claim as prohibited under La. Code Crim. P. art. 930.4.  Hicks argues that review of his claims were exhausted because he received review of the issue of prosecutorial misconduct at each level of the state courts.

The state does not contest exhaustion of Hicks's two ineffective assistance of counsel claims, and recognizes that they were resolved on the merits in light of the Louisiana Supreme Court's finding that Hicks's failed to meet his burden under *Strickland*.

Thus, at issue here is whether Hicks properly exhausted state court review of his constitutional claim of prosecutorial misconduct based on the prosecution's alleged calling of a drug addled Darlene Hicks as "subterfuge" for the introduction of her hearsay pretrial statement inculpating her nephew, petitioner Hicks, and whether that claim is in procedural default.

### A.    <u>Exhaustion Doctrine</u>

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Preiser v. Rodriguez*,

411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. A federal habeas petition should be dismissed if state remedies have not been exhausted as to *all* of the federal habeas claims and supporting arguments brought by the petitioner. *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).

The exhaustion requirement is satisfied when the substance of the federal habeas claims has been "fairly presented to the *highest* state court" in a procedurally proper manner. *Id.* at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Walker*, 533 U.S. 167, 177-79 (2001). The federal claim also must be "the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents *new legal theories* or *new factual claims* in his federal application." *Id.* at 387 (citing *Nobles*, 127 F.3d at 420) (emphasis added). It also is not enough for a petitioner to raise the claims in the lower state courts if they were not also specifically presented to the Louisiana Supreme Court in a procedurally proper manner. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

The burden is on the petitioner to properly assert his federal claim in the state courts in a manner and time when state procedural law permits its consideration on the merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (citing *Baldwin*, 541 U.S. at 30-32). Thus, when a petitioner has failed to exhaust state court remedies and the state court to which petitioner would be required to

present his claims would now find the claims to be procedurally defaulted or barred, the claims are procedurally defaulted for purposes of federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

A habeas petitioner who has defaulted his federal claims in this way meets the "technical" requirements for exhaustion, because there are no state remedies left "available" to him. *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *see* 28 U.S.C. § 2254(b); *Coleman*, 501 U.S. at 732 (citing *Engle v. Isaac*, 456 U.S. 107, 125-126 & n.28 (1982)). The United States Supreme Court has determined that the exhaustion requirement "'refers only to remedies still *available* at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" *Gray*, 518 U.S. at 161-62 (quoting *Engle*, 456 U.S. at 125 n.28, and *Castille v. Peoples*, 489 U.S. 346, 351 (1989)) (emphasis added, citations omitted). The procedural bar created by a petitioner's technical exhaustion stands as an adequate and independent state procedural ground and prevents federal habeas corpus review of a defaulted claim. *Gray*, 518 U.S. at 162 ("[t]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim . . ."); *see also Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas . . ."); *Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). A petitioner's technically exhausted and defaulted claims are to be dismissed by the federal habeas court without review of the merits.

**B.**     **Hicks Appears to Have Exhausted the Basis of his Prosecutorial Misconduct Claim (Claim No. 3) in State Court**

"[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray*, 518 U.S. at 162-163. And "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id*. at 163. The determination of whether a federal claim was fairly presented to the state courts is made by looking to the petitioner's briefs filed in state court, rather than the state court's decisions. *Dye v. Hofbauer*, 546 U.S. 1 (2005); *Smith v. Digmon*, 434 U.S. 332 (1978).

In his counsel-filed federal petition, Hicks asserts that his "Fifth Amendment rights were violated when the State knowingly used a drug-addicted witness who testified under the influence of narcotics."[44] Under the title "Prosecutorial Misconduct," he argues as he did in the state courts, that the State "abused its authority and committed misconduct in its treatment, manipulation, and misuse of witness Darlene Hicks."[45] He claims, as he did in the state courts, that during her trial testimony, the State "strongarmed" Darlene Hicks into adopting her pretrial statement despite her claimed lack of memory or recall and denial of accountability because of her lifelong alcohol and drug abuse. He contends, similar to his state court arguments, that the prosecution forced her to testify knowing of her drug addiction to "shoehorn crucial hearsay statements into the record."[46] Relying on her affidavit, as he did in state court, Hicks's further argues that Darlene Hicks, now "clean and sober," attested to remarkable recall of the arrival of detectives on December 27, 2012,

---

[44] ECF No. 1-1 at 3, Memorandum in Support.
[45] *Id*. at 17.
[46] *Id*.

but absolutely no recall of what she told them.[47]  She also recalled events in May of 2017, when despite her subpoena, deputies had to bring her to court to testify.  She attempted to answer questions but was confused because she was "heavily using narcotics and not thinking straight."[48]

In his counsel-filed state court post-conviction pleadings, Hicks asserted these same arguments up to the point of discussing his claims in term of the Fifth Amendment specifically. Instead, in the state courts, he argued that the prosecution inappropriately took advantage of Darlene Hicks's confusion to introduce her prior statement under the guise of impeachment evidence.[49]  This, he argued, violated Louisiana's hearsay rules and this "staging an impeachment" was "subterfuge" and amounted to reversible error.[50]  He repeated this same evidentiary argument in the Louisiana Fifth Circuit and Louisiana Supreme Court.[51]  He also averred that the prosecutor had reason to be suspicious of her competence, recollection, and sobriety but continued with her testimony because she claimed no recollection of the content of her prior statement and admitted using cocaine hours before trial.[52]

Hicks through counsel appears to have argued to the state courts that these actions by the prosecutor denied him due process, violated the state and federal constitutions, and violated notions of "fair play which underlie the trial process."[53]  No doubt, Hicks now claims in his federal petition that the prosecution's harsh questioning of (or tactics used upon) Darlene Hicks "so infected the trial" that he was denied due process, which is a much clearer invocation of due

---

[47] *Id*. at 17-18.
[48] *Id*. at 18.
[49] ECF No. 9-2 at 32-34, Second Suppl. Application, 11/17/20.
[50] *Id*. at 33.
[51] ECF No. 9-7 at 71, 5th Cir. Writ Application, 21-KH-217, 5/10/21; *id*. at 204-05.
[52] *Id*. at 206.
[53] *Id*. at 206.  The Court is not obliged to broadly construe counsel-filed pleadings.  However, to afford petitioner all due fairness, the Court has culled through the bumptious rhetoric in the counsel-filed state courts pleadings to determine an apparent intent to present due process arguments.

process.[54]  Nevertheless, while he claims here for the first time that the prosecution "knowingly

parad[ed] an intoxicated or incapacitated witness on the stand to recite drug-addled recollection,"

there was sufficient argument made in the state courts, and addressed by the state courts, regarding

trial fairness to conclude that Hicks presented a due process claim within his state law evidentiary

challenge.

For this reason, the court will reject the State's technical exhaustion defense and proceed

with review of the other procedural defense asserted as to the prosecutorial misconduct claim.

### C.    <u>Procedural Default</u>

In addition to the technical exhaustion discussed above, the State also asserts a traditional

procedural default by Hicks's on his prosecutorial misconduct claim under La. Code Crim. P. art.

930.4.  This type of procedural default is based on a state procedural rule specifically imposed by

a state court to bar review of a claim.  Procedural default bars federal court review of a federal

claim in a habeas petition when the *last* state court to render a judgment in the case has clearly and

expressly indicated that its judgment is independent of federal law and rests on a state procedural

rule that bars review.  *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Glover v. Cain*, 128 F.3d 900,

902 (5th Cir. 1997).

#### a.    <u>Independent and Adequate</u>

Generally, a federal court will not review a question of federal law decided by a state court

if the decision of that state court rests on a state law ground that is both independent of the merits

of the federal claim and adequate to support that judgment.  *Coleman*, 501 U.S. at 731-32; *Glover*,

128 F.3d at 902; *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris*, 489 U.S.

---

[54] ECF No. 1-1 at 18-19, Memorandum in Support.

at 260 & 262).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  Federal review is barred even if the state court alternatively addressed the merits.  *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Harris*, 489 U.S. at 264 n.10).

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural grounds that bars review of the claim.  *Amos*, 61 F.3d at 338.  The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90 (1977).

The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Walker v. Martin*, 562 U.S. 307, 315-17 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Beard*, 558 U.S. at 60 (citations omitted).  In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

16

However, when evaluating the adequacy of the rules applied to bar a petitioner's claim in state court, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). It is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (addressing La. Code Crim. P. art. 930.3).

### b.      Last Reasoned State Court Decision

In Hicks's case, the Louisiana Supreme Court was the last court to rule on his prosecutorial misconduct claim.[55] The court denied his writ application for the following reasons:

> Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to his remaining claims, he fails to meet his post-conviction burden of proof and/or the claims are repetitive. La.C.Cr.P. art. 930.2; La.C.Cr.P. art. 930.4.[56]

Under La. Code Crim. P. art. 930.2, "[t]he petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted." As noted previously, La. Code Crim. P. art. 930.4 procedurally bars review of repetitive and successive claims and petitions. The Louisiana Supreme Court referenced both articles as alternative grounds for denying Hicks's "remaining claims," which includes Hicks's prosecutorial misconduct claim.

Hicks argues that La. Code Crim. P. art. 930.2 "is a substantive provision, not a procedural one;" thus, his claims were resolved on the merits and should be reviewed under the AEDPA.[57]

---

[55] *Hicks*, 350 So. 3d at 861; ECF No. 9-7 at 328-29, La. Sup. Ct. Order, 2021-KP-00904, 12/6/22.
[56] *Hicks*, 350 So. 3d at 861; ECF No. 9-7 at 328-29, La. Sup. Ct. Order, 2021-KP-00904, 12/6/22.
[57] ECF No. 12 at 4, Petitioner's Reply.

However, the alternative reference to Article 930.2 does not change the effect of the procedural bar imposed by the state courts under Article 930.4. In fact, it is well settled that imposition of a procedural bar prevails to prevent federal court review over any alternative discussion of the merits of the claim by a state court. *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019) (citing *Harris*, 489 U.S. at 263); *Robinson v. Louisiana*, 606 F. App'x 199, 204 (5th Cir. 2015) (citing *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010)). Thus, even if the reference to La. Code Crim. P. art. 930.2 referred to a merits burden of proof, that does not change the fact that the court also relied on the La. Code Crim. P. art. 930.4 procedural bar; and that procedural bar prevails.

This conclusion is consistent with the federal courts' consideration of the Louisiana Supreme Court's citation to La. Code Crim. P. art. 930.2. The federal courts have resolved that the Louisiana Supreme Court's reference to Article 930.2 that *does not also include* reference to another ground for dismissal, is a decision on the *merits* and does not constitute, or adopt, a state procedural bar. *See*, *e.g.*, *Woodfox*, 609 F.3d at 796 (state court's dismissal citing La. Code Crim. P. art. 930.2 is, in the absence of evidence to the contrary, an adjudication on the merits for AEDPA purposes); *Darby v. Vannoy*, No. 19-13900, 2020 WL 5468953, at *7 (E.D. La. Aug. 14, 2020) (same, collecting cases), *R&R adopted by* 2020 WL 5436571, at *1 (E.D. La. Sep. 10, 2020); *but see*, *Atkins v. Hooper*, 979 F.3d 1035, 1042-43 (5th Cir. 2020) (finding Louisiana Supreme Court's reference to La. Code Crim. P. art. 930.2 was not a reasoned opinion where that court already rejected multiple related claims and arguments as procedurally defaulted, then for AEDPA review, looked to lower state court opinion as the last reasoned opinion).

The same is not true, when the reference to Article 930.2 is accompanied by reference to another procedural ground. *See Lyons v. Vannoy*, No. 17-4621, 2018 WL 2944631, at *18-19 (E.D. La. May 14, 2018) (imposing procedural bar under La. Code Crim. P. art. 930.4(C)

18

referenced by the Louisiana Supreme Court with La. Code Crim. P. art. 930.2), *R&R adopted by* 2018 WL 2938309, at *1 (E.D. La. Jun. 12, 2018); *Sparkman v. Vannoy*, No. 17-1416, 2017 WL 10646444, at *7 (E.D. La. Dec. 1, 2017) (imposing procedural bar under La. Code Crim. P. art. 930.4(B) referenced by the Louisiana Supreme Court with La. Code Crim. P. art. 930.2), *R&R adopted by* 2018 WL 6523144, at *1 (E.D. La. Dec. 12, 2018), *aff'd*, 799 F. App'x 302 (5th Cir. 2020); *Harris v. Vannoy*, No. 16-10938, 2017 WL 5599504, at *4-5 (E.D. La. Nov. 21, 2017) (imposing procedural bar under La. Code Crim. P. art. 930.4(B) & (C) referenced by the Louisiana Supreme Court with La. Code Crim. P. art. 930.2)

In Hicks's case, the Louisiana Supreme Court's ruling *did include* reference to Article 930.2 *and* another ground for dismissal, La. Code Crim. P. art. 930.4. The procedural bar prevails over the alternative merits discussion. *Busby*, 359 F.3d at 718. Nevertheless, when the federal courts cannot easily discern whether the state's high court intended a merits versus procedural denial, the courts utilize a three-part test to determine whether a reference to Article 930.2 was a merits review. *Woodfox v. Cain*, 772 F.3d 358, 371 (5th Cir. 2014) (citing *Mercadel*, 179 F.3d at 274). The test requires the following considerations:

(1)    what the state courts have done in similar cases;
(2)    whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and
(3)    whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits.

*Id*. at 371.

Applying this *Melancon* test to Hicks's case, the first step is not definitive either way because, as noted above and in *Woodfox*, the Louisiana Supreme Court and other state courts have

cited La. Code Crim. P. art. 930.2 to refer to the burden of proof as to the merits in some cases and as here, as part of a procedural bar in others.  *Id.*[58]

Under the second question, the history of Hicks's case reflects that all of the state courts, including the Louisiana Supreme Court, referenced La. Code Crim. P. art. 930.4, specifically subsection (B) in the lower courts, to find Hicks's prosecutorial misconduct claim procedurally barred from review for his failure raise the claim at trial or on appeal.  While the courts also entered reasons why the claim was meritless, those discussions were in alternative to the procedural bar. This factor favors a finding that the state courts denied Hicks's prosecutorial misconduct claim on procedural grounds.

For similar reasons, the third *Melancon* factor favors a finding that the state courts relied on procedural grounds to dispose of Hicks's prosecutorial misconduct claim.  Each level of the state courts made clear reference to and/or discussed the procedural bar under La. Code Crim. P. art. 930.4.  They each indicated their respective merits denial as alternative, an "even if" or "and/or," to the prevailing Article 930.4 procedural bar.  This factor favors a finding that the state court's relied on a procedural bar.

For these reasons, as the State observes, the state courts procedurally barred review of Hicks's prosecutorial misconduct claim under La. Code Crim. P. art. 930.4 which prohibits "[r]epetitive applications," including under subpart B those that allege "a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction.

---

[58] *Woodfox* cited the following cases to support its findings: *State v. LeBlanc*, 937 So. 2d 844, 844 (La. 2006) (citing Article 930.2 after stating that petitioner failed to show he pleaded guilty involuntarily); *State v. Berry*, 430 So. 2d 1005, 1013 (La. 1983) (citing Article 930.2 because petitioner's claim that the jury was not furnished with a copy of aggravating and mitigating circumstances was "unsubstantiated and therefore without merit"); *State v. Russell*, 887 So.2d 462 (La. 2004) (citing Article 930.2 because petitioner failed to carry his burden of proof that post-conviction application was timely filed, which is a procedural ground for dismissal).

. ." That procedural denial prevails over the alternative discussion of the merits to prevent federal review of Hicks's prosecutorial misconduct claim. *See Rhoades*, 914 F.3d at 372 (citing *Harris*, 489 U.S. at 263).

### c. Article 930.4 is Adequate and Independent to Bar Federal Review of Hicks's Prosecutorial Misconduct (Claim No. 3)

In this case, the Louisiana courts relied on La. Code Crim. P. art. 930.4 to bar review of Hicks's prosecutorial misconduct claim. As noted above, La. Code Crim. P. art. 930.4(B) bars repetitive post-conviction applications that allege "a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction . . ." This Louisiana procedural rule is without doubt independent of federal law and also adequate to bar federal review of Hicks's prosecutorial misconduct claim. *See Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *4-5 (5th Cir. 2001).

The state courts' rulings were clearly based on Louisiana law setting forth the procedural requirements for the preservation and presentation of post-conviction claims. *Id.* at *4; *see Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (state courts' clear reliance on state procedural rule is determinative of the issue). In addition, La. Code Crim. P. art. 930.4, is a rule regularly and evenhandedly applied to prevent a defendant from inexcusably making repetitive attacks on his state court conviction. *Ardison*, 2001 WL 822445, at *4-5; *Phillips v. Hooper*, No. 19-30199, 2022 WL 327017, at *3 (5th Cir. Feb. 3, 2022) (finding La. Code Crim. P. art. 930.4(B) independent and adequate by regular application to bar federal habeas review) (citing *Holmes v. Vannoy*, No. 16-6894, 2018 WL 941712, at *6 (E.D. La. Jan. 11, 2018)); *Abdul v. Tanner*, No. 17-9108, 2019 WL 1325953, at *4 (E.D. La. Mar. 25, 2019) (finding it well settled that Article 930.4(B) is independent and adequate); *Coleman v. Cain*, No. 07-3655, 2014 WL 348541, at *11

(E.D. La. Jan. 31, 2014) (Article 930.4(B) & (C) are independent and adequate to bar federal habeas review); *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is an independent and adequate state procedural rule).

It is not the province of this federal habeas court to review the state courts' reliance on the bar or to look for error in its application. Nevertheless, Hicks has shown nothing erroneous about the state courts' application of La. Code Crim. P. art. 930.4 to bar review of his prosecutorial misconduct claim. While he may not have obtained the affidavit from Darlene Hicks at trial or direct appeal, the contents of her affidavit challenge the State's actions, questioning, and presentation of alleged hearsay evidence *during* trial, all of which were known to him and his counsel. In fact, Hicks's claims the events at trial should have made the State "suspicious" about Darlene Hicks's "drug-addled recollections," "competence, recollection, and - indeed - sobriety," along with her admission of having using cocaine hours before trial.[59] If these matters were or should have been evident at trial to the State, they also were evident and discernable or known to Hicks and his counsel as well. The defense could have certainly objected or raised the challenge on direct appeal. Even if his appellate counsel did not assert the claim, as the Louisiana Fifth Circuit recognized, Hicks was granted leave to file a *pro se* supplemental brief on appeal in which he could have challenged such things, and he failed to do so.

The procedural-default doctrine presumes that a state procedural ground is "adequate and independent," and the burden is on the habeas petitioner to demonstrate otherwise. *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999). To the extent Hicks's challenges the adequacy and propriety of the procedural bar, his arguments are not persuasive.

---

[59] ECF No. 1-1 at 17, 19, Memorandum in Support; ECF No. 9-7 at 206, La. Sup. Ct. Writ Application, 21-KP-009, 12/6/22.

For these reasons, the procedural bar under La. Code Crim. P. art. 930.4 was therefore independent of federal law and adequate to bar review in this federal habeas court of Hicks's prosecutorial misconduct claim.  This Court will not review the claim unless Hicks has established one of the following exceptions.

### d.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262); *see Engle*, 456 U.S. at 128 & n.33.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  *Id*. at 486.

Hicks points to nothing that actually impeded his efforts to properly present his prosecutorial misconduct claim.  As discussed above, the facts underlying his claim that the State improperly admitted Darlene Hicks prior statement at trial, as determined by the state courts, were known at the time of trial and direct appeal.  There is nothing in the record, or argued by Hicks, that establishes cause for his failure to bring his claim to the state courts in a procedurally proper manner.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  *Hogue v. Johnson*, 131 F.3d 466, 497

(5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Hicks's defaulted prosecutorial misconduct claim is therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996), *vacated on other grounds*, 522 U.S. 87 (1998)[60] (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief).

### e.  **Fundamental Miscarriage of Justice**

Hicks's may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, Hicks must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") "It is important to note in this regard

---

[60]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte* but may do so in its discretion. *Id*. That is not an issue here.

that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 6324 (1998) (citing *Sawyer*, 505 U.S. at 339).  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Hicks presents no support, and the record contains nothing, to suggest or establish his actual innocence on the underlying crimes to compel this court to consider his claim of prosecutorial misconduct.  In other words, Hicks fails to present any evidence or argument of the kind of actual innocence that would excuse the procedural default of that claim.  He, therefore, has failed to overcome the procedural bar to his prosecutorial misconduct claim, and the claim should be dismissed with prejudice.

IV.    **Standards of a Merits Review of the Remaining Claims**

The standard of review under the AEDPA is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference

be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a

26

Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell*, 535 U.S. at 699.

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).  In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Effective Assistance of Counsel (Claims 1 and 2)

Hicks alleges that he was denied effective assistance of counsel when his private retained counsel failed to appear to represent him at trial, which denied him the right to counsel of his choice.  He also alleges he was denied effective assistance of counsel on direct appeal when his appointed counsel failed to assert a claim of insufficient evidence to support the verdicts.  The State in opposition argues that Hicks failed to establish that he was denied effective assistance under *Srtickland* standards for the reasons provided by the state courts and the denial of relief was not contrary to or an unreasonable application of Supreme Court law.

A.    **Counsel of Choice Issue**

1.    **Background**

After his indictment on April 25, 2013, Hicks was initially represented by an appointed public defender, John Benz.[61]  On August 15, 2013, Aidan Shah, an associate with Martin Regan's law firm filed omnibus motions on Hicks' behalf, and made a first appearance for Hicks' on August 19, 2013.[62]  Less than one year later, on June 25, 2014, Shah moved and was granted leave to withdraw generally referencing "circumstances" that led to "an irremediable breakdown in the attorney-client relationship" with Hicks.[63]  The breakdown apparently was that Hicks' family stopped making payments to Shah or her firm, Martin Regan & Associates.[64]

Appointed counsel, Benz, again began to represent[65] Hicks without any concerns of record for the next almost three years, until May 1, 2017, when Martin Regan and his associate Adam Koob appeared at an in court status conference (at which Hicks' presence was waived), to announce an intent to enroll on Hicks' behalf.[66]  Apparently, Hicks' mother made an $1,100 payment on the $2,605 balance owed to Regan's firm on April 21, 2017, leaving a balance owed of $1,505.[67]  Following bench conference, which was not transcribed, the state trial judge made the following observations with regard to Regan's last minute appearance:[68]

> Mr. Regan I just want to state something for the record so that it is all very clear.  Mr. Hicks' trial is set and has been set for sometime [sic] for the court's trial docket of May 15, to be tried during the week of May 15.  It is a 2012 murder case that has been continued for any number of reasons over the course of those years.  Mr. Hicks is entitled to have his trial.  The District Attorney is entitled to have their

---

[61] ECF No. 9-1 at 16, Min. Entry, 5/29/13; *id*. at 17; Omnibus Motions, 6/17/13; *id*. at 28, Min. Entry, 7/10/13.
[62] *Id*. at 29, Omnibus Motions, 8/15/13; *id*. at 37, Min. Entry, 8/19/13.
[63] *Id*. at 59, Motion to Withdraw (Shah), 6/25/14; *id*. at 59, Trial Court Order, 6/26/14.
[64] ECF No. 1-1 at 10, Memorandum in Support; ECF No. 9-2 at 2, Affidavit of Terrie Hicks, 8/5/20.
[65] *See* ECF No. 9-1 at 62, Min. Entry, 7/14/14.
[66] ECF No. 9-5 at 279, Hearing Tr., 5/1/17; ECF No. 9-1 at 129, Min. Entry, 5/1/17.
[67] ECF No. 9-1 at 379, Payment Receipt, 4/21/17; ECF No. 9-2 at 2, Affidavit of Terrie Hicks, 8/5/20.
[68] ECF No. 9-5 at 280-81, Hearing Tr., 5/1/17.

trial as this matters is presently set and the Court has cleared its docket in anticipation of trying the case this week.  This case will go forward on that week.

That being said, certainly, Mr. Hicks has a right to choose his Counsel.  If he intends to hire you and if you intend to enroll as Counsel of Record, I am not jamming you at this point because I understand from the discussion at the bench that you have some other issues that you need to resolve.

Just understand that if you file a motion to enroll in this case, you will be his attorney and it will go to trial on May 15, which is at this point only 14 days away.

Regan voiced no objection to going forward, and instead indicated his familiarity with Hicks' case based on his prior representation and recent meetings with Hicks.[69]  He also noted his intent to have two unrelated matters in another parish moved and would notify the court and attorney Benz as soon as possible about his enrollment.  The state trial judge then made clear for the record that until such time as Regan actually enrolled, Benz would remain as Hicks' counsel, and further, confirmed that if Regan enrolled, he understood that trial would proceed on May 15, 2017.[70]

After another bench conference off the record, the court further noted for the record that attorney Koob believed that the motion to enroll may have already been filed and asked the court to withhold ruling on the motion until the court received confirmation from Regan that it was "okay to sign."[71]  When Hicks appeared for trial on May 15, 2017, he was represented by appointed attorney Benz.[72]  The record contains no motion to enroll Regan or Koob and no memorialization of anything regarding Regan or Koob after the May 1, 2017, status conference.

As outlined previously, after Hicks' trial, appointed attorney Benz filed a motion for new trial alleging trial court error in its failure to facilitate Regan's enrollment in the case through a

---

[69] *Id*. at 281.
[70] *Id*. at 281-82.
[71] *Id*. at 282-83.
[72] ECF No. 9-1 at 150, Trial Mins., 5/15/17.

continuance.[73]  Prior to sentencing on June 7, 2017, the court denied the motion.[74]  The court noted Regan was offered the opportunity to enroll and made aware that the scheduled trial would remain in place despite any last minute change in attorneys.[75]  The court noted the length of time the case had been pending and set for trial as to both co-defendants.  The court also indicated that it had no opposition to Regan representing Hicks and told Regan he would sign a motion to enroll, but Regan never enrolled and did not appear for trial.

On direct appeal, Hicks' appointed counsel asserted that the trial court erred in denying the motion for new trial in that the court had erred in denying Hicks's motion for trial continuance which resulted in the denial of his right to counsel of his choosing.[76]  On October 17, 2018, the Louisiana Fifth Circuit denied relief under state case law addressing the denial of counsel of choice.[77]  The Court found that, because private counsel (Regan) never moved to enroll or for a continuance, there was no ruling by the trial court to review and no contemporaneous objection to preserve any error for appeal, citing La. Code Crim. P. art. 841.  Alternatively, the Court found that Hicks' failed to prove any error in the trial court's denial of the motion for new trial (which was based on a failure to continue trial), failed to prove that his right to counsel of choice was denied when neither appointed or private counsel filed a motion to continue, and failed to prove prejudice at trial based on any action by the trial court.[78]

As outlined previously, on post-conviction review, Hicks' current post-conviction counsel revamped this claim of trial court error into a clam of denial of counsel of choice through

---

[73] *Id*. at 235.
[74] *Id*. at 244, Nunc Pro Tunc Sentencing Mins., 6/8/17.
[75] ECF No. 9-5 at 172-73, Sentencing Tr., 6/7/17.
[76] *Id*. at 199, Appeal Brief, 2017-KA-0419, 10/10/17.
[77] *Hicks*, 258 So. 3d at 1035-36; ECF No. 9-5 at 262-63, 5th Cir. Opinion, 17-KA-419, 10/17/18.
[78] *Hicks*, 258 So. 3d at 1038; ECF No. 9-5 at 265-67, 5th Cir. Opinion, 17-KA-419, 10/17/18.

abandonment by attorney Regan with a sidenote that the trial court could have granted a continuance to facilitate the change in counsel.[79]   The state trial court barred review of the claim as repetitive citing La. Code Crim. P. arts. 930.4(A), (B).   The Louisiana Fifth Circuit also found the claim barred under Article 930.4(A) and alternatively, as meritless for failing to meet the *Strickland* burden of proof.   In the last reasoned decision issued by December 6, 2022, the Louisiana Supreme Court denied Hicks' ineffective assistance of counsel claims for his failure to meet his burden under *Strickland*.

### 2.      *Strickland* Effective Assistance of Counsel Standard

In *Strickland*, relied on by the state courts, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.   *Strickland*, 466 U.S. at 687.   The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).   In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).   "The defendant must show that counsel's representation fell below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 687-88.   The analysis of counsel's performance must take into account the reasonableness of counsel's

---

[79] ECF No. 9-1 at 354, Application for Post-Conviction Relief, 7/8/20.

actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The Supreme Court has clarified, that when applying *Strickland* on habeas review, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* opinion went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id*. (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

### 3.    *Gonzalez-Lopez* Counsel of Choice Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." One element of the Sixth Amendment right to counsel is "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Wrongful deprivation of this choice of counsel is a "structural error" that "pervades the entire trial." *Id*., at 150. The Supreme Court has recognized that "[d]ifferent lawyers do all kinds of

things differently, sometimes 'affect[ing] whether and on what terms the defendant . . . plea bargains, or decides instead to go to trial' - and if the latter, possibly affecting whether she gets convicted or what sentence she receives.  So for defendants . . . having the ability to retain the 'counsel [they] believe[ ] to be best' - and who might in fact be superior to any existing alternatives - matters profoundly." *Kaley v. United States*, 571 U.S. 320, 337 (2014) (footnote and citations omitted).  Thus, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Gonzalez-Lopez*, 548 U.S. at 144 (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-625 (1989)).

However, the right to counsel of choice is not absolute.  *Gonzalez-Lopez*, 548 U.S. at 144. Instead, a violation of the right is limited to cases where the trial court unreasonably or arbitrarily interfered with a defendant's ability to choose his counsel.  *United States v. Mendoza–Salgado*, 964 F.2d 993, 1016 (10th Cir. 1992) (explaining that automatic reversal is limited to cases where the trial court unreasonably or arbitrarily interfered with a defendant's right to counsel of choice). The Supreme Court also recognizes a trial court's "wide latitude in balancing the right to counsel of choice against the needs of fairness . . . [and] against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 151–52 (citing *Wheat v. United States*, 486 U.S. 153, 163-64 (1988), and *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).  Thus, a trial court has broad discretion and "power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Gonzalez-Lopez*, 548 U.S. at 151-52.  For example, "trial courts must necessarily be wary of last minute requests to change counsel lest they impede the prompt and efficient administration of justice." *United States v. Pineda*, 481 F. App'x 211, 212 (5th Cir. 2012) (quoting *McQueen v.*

*Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985)); *United States v. Magee*, 741 F.2d 93, 95 (5th Cir. 1984) (". . . it is within the judge's discretion to deny a change of counsel on the morning of trial if the change would require a continuance.").

### 4.    Discussion

In his federal petition, Hicks claims that he was abandoned by and denied counsel of choice when he paid attorney Regan to represent him, Regan appeared before the state trial court to declare his intent to enroll, but Regan did not enroll or appear at trial. These failings, Hicks claims, left him to proceed with appointed trial counsel who was not his counsel of choice, but whom Hicks concedes provided effective assistance throughout the proceedings.

As an initial consideration, Hicks' claims in this court are based on his assertions that he relied on attorney Regan's actions and was unaware that Regan relinquished representation until the day of jury selection.[80] There is no clearly established Supreme Court precedent addressing actions of an attorney not enrolled as counsel for a defendant as a premise for a counsel of choice claim under the foregoing precedent. To be "clearly established" law for habeas relief, the Supreme Court must squarely address and decide the issue. *Williams*, 529 U.S. at 412; *Thomas v. Vannoy*, 898 F.3d 561, 566 (5th Cir. 2018). There is no clear Supreme Court precedent "when the Court has yet to squarely consider it." *Id.* at 566 (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013)). In addition, precedent is not clearly established if a federal habeas court "must extend a rationale before it can apply to the facts at hand." *White*, 572 U.S. at 426 (quoting *Yarborough*, 541 U.S. at 666).

---

[80] ECF No. 1-1 at 11, Memorandum in Support.

Based on the established Supreme Court precedent cited above, claims of denial of counsel of choice are based on actions by trial courts and prosecutors (through contrived conflicts of interest) that may interfere with a defendant's exercise of the right to have counsel of his choice. *See Mendoza–Salgado*, 964 F.2d at 1016. That is not the basis for Hicks' claim before this federal habeas court. Hicks' assertions based on attorney Regan's actions are not recognized by Supreme Court precedent as a basis for claiming a violation of the right to counsel of choice.

Furthermore, Hicks was deemed by the state courts to be in need of an indigent defender, *i.e.* appointed counsel Benz, and Hicks all but concedes that his family really could not afford Regan's services, something that tainted that attorney client relationship throughout. This inability to pay also technically precludes a claim that he had a right to counsel of choice. The Supreme Court has made clear that an indigent defendant does not have the right to his preferred counsel of choice when he is indigent. *See Luis v. United States*, 578 U.S. 5, 12 (2016); *United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2015).

Nevertheless, Hicks' claims do not fall within the parameters of a counsel of choice claim under the foregoing Supreme Court precedent. It is critical that Hicks "is not here arguing that [the state trial court] erred in refusing to grant a Motion to Continue."[81] Such a claim challenging a court action would likely engage a question of denial of counsel of choice under the above precedent. *See Mendoza–Salgado*, 964 F.2d at 1016.

Instead, Hicks focuses his arguments on the assertion that attorney Regan's "ethical lapse and total abandonment amounts to the violation of Petitioner's constitutional right to the attorney of his choosing and represents a fundamental defect impugning the integrity of these

---

[81] ECF No. 1-1 at 11, Memorandum in Support.

proceedings."[82]  The alleged ethical lapse alleged occurred in 2017 when Regan's accepted

payment from Hicks' family, "drafted and signed a Motion to Enroll," and "physically appeared"

at the May 1, 2017, hearing before the state trial court to announce his intent to enroll.[83] Hicks also

complains that Regan did not inform him of any "doubts regarding his efficacy" or that "his

representation was contingent on resetting other matters."[84]  Hicks claims that he relied on Regan's

actions and was unaware that Regan relinquished representation until the day of jury selection.[85]

Hicks' complaints against Regan invoke ethical or contractual breaches by a lawyer not

enrolled in his case, and not the type of constitutional violations by enrolled counsel that fall within

the obvious purview of this federal habeas court's review. The alleged ethical violations by

attorney Regan, who never enrolled, appear to have remained outside of any constitutional

protections owed to Hicks under the Sixth Amendment or *Strickland*.[86]  *See Nix v. Whiteside*, 475

U.S. 157, 165 (1986) ("Under the Strickland standard, breach of an ethical standard does not

necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."); *Beets

v. Scott*, 65 F.3d 1258, 1267 (5th Cir. 1995).

Nevertheless, assuming these protections were invoked, the state courts properly addressed

Hicks's ethical claims related to attorney Regan under *Strickland*.  The Supreme Court has made

clear that claims regarding ethically deficient performance by an attorney, other than multiple or

---

[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] Also, the fact that Hicks has provided photographs of copies of a signed motion and payment receipt are to no avail.  His reliance on that copy (and payment on the debt owed Regan) is not relevant to the Sixth Amendment analysis under *Strickland* (or *Gonzalez-Lopez*) and is instead perhaps support for any ethical or contractual issue he may raise at the state level.  This federal court, however, does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding . . ."  *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); s*ee also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).

conflicting representations of clients, are to be addressed under the standards of *Strickland*, 466 U.S. at 668. *See Mickens v. Taylor*, 535 U.S. 162, 174-76 (2002). This means that Hicks would have to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Alas, Hicks concedes that his actual appointed trial counsel Benz was not ineffective and makes certain that he asserts no such claim again attorney Benz. As a result, Hicks concedes that he received effective assistance during his state criminal proceedings and therefore, cannot establish that Regan's unethical or unprofessional errors, *i.e.* failing to enroll and/or reneging on representation, did not prejudice or impact the result of that proceeding.

In addition, it is important to note that the state trial court was not "quick to foist a substitute attorney to represent Petitioner."[87] Hicks is remiss for suggesting such a blatant misrepresentation of the record. Attorney John Benz had in fact been Hicks' diligent and effective attorney (as conceded by Hicks and found by the state courts) for almost three years when Regan showed up two weeks before trial on May 1, 2017. Hicks' "foisting" comment is factually baseless and not supported by the record.

Hicks also fails to state a cognizable claim of abandonment by counsel where Regan never enrolled in the first place and Hicks points to nothing ineffective in the representation he actually received. Regan was not part of the adversarial process as envisioned by the Supreme Court in addressing the presumption of prejudice in *United States v. Cronic*, 466 U.S. 648, 659 (1984), which eliminating *Strickland*'s prejudice requirement when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. Hicks' counsel, Benz, more than adequately

---

[87] ECF No. 12 at 5, ¶2, Petitioner's Reply.

challenged the prosecution's case, as Hicks acknowledges.  In other words, as *Cronic* and related cases would require, Hicks' had competent counsel at each critical stage. Hicks presents no Supreme Court precedent that would apply *Cronic* in the way he suggest, and this Court has found none nor any other court to have done so.  This habeas court does not have the authority to extend *Cronic* to actions of counsel not actually enrolled in the case, especially where the defendant, like Hicks, concedes he had effective assistance of counsel at trial through appointed counsel.

Finally, as noted above, Hicks suggests that the trial court had some duty to inquire why Regan did not enroll or did not appear for trial.  To the extent this is an effort to support a denial of counsel of choice claim through court action, there is no Supreme Court precedent to compel or even suggest such a duty.  Hicks again provides no legal support for this "duty" claim and this Court has found none.  The state trial court held extensive on and off the record conversations with Regan and Koob on May 1, 2017.  The record is clear that Regan needed to enroll, and if he did not, the state trial court would proceed with appointed counsel Benz as counsel.[88]  Hicks has made no showing that state trial court interfered with his hiring of Regan, especially considering Regan's stated commitment to file the motion to enroll and readiness for trial.  *See Gonzalez-Lopez*, 548 U.S. at 151-52 (discussing a court's discretion to assess last minute changes of counsel).  In addition, as resolved by the state appellate court, with no motion to enroll or continue in the record, there was no further action for the state trial court to take on the matter.

For these reasons, the state courts' resolution of Hicks' claim under *Strickland* (and its prejudice prong) was reasonable and appropriate. While prejudice is not a consideration for denial of counsel of choice, it is a component under *Strickland*, the proper Supreme Court law applied to

---

[88] ECF No. 9-5 at 281-83, Hearing Tr., 5/1/17.

alleged unethical performance by counsel. Thus, as resolved by the state courts, Hicks has not shown deficient performance by his actual trial counsel and concedes no prejudice at his trial as a result of attorney Regan's absence. The state courts' denial of relief of Hicks's claim was neither contrary to nor an unreasonable application of Supreme Court law.  Hicks is not entitled to federal habeas relief on this claim.

### B.    <u>Effective Assistance of Appellate Counsel</u>

Hicks alleges that his appellate counsel was ineffective when she failed to assert a claim of insufficient evidence to support the verdict.[89]  He asserts that counsel should have raised the claim because the verdict was "irrational" and based on "irreconcilable evidence" and "incompatible witnesses" whose credibility could not be rationally reconciled to reach a verdict that both co-defendant Payne guilty of manslaughter and Hicks guilty of second degree murder.[90] He claims that there was no physical evidence to link him to the murders and only one witness (Williams) placed him at the scene, and that witness's testimony could not be reconciled with testimony placing co-defendant Payne at the scene.[91]

In its opposition memorandum, the State argues that Hicks's counsel was not ineffective for failure to assert a meritless insufficient evidence claim.[92]  The State urges that denial of relief by the state courts was not contrary to or an unreasonable application of *Strickland* and its progeny.

Hicks asserted this claim in his counsel-filed application for post-conviction relief before the state trial court.  The state trial court found that Hicks's appointed appellate counsel performed

---

[89] ECF No. 1-1 at 12, Memorandum in Support.
[90] *Id*. at 16.
[91] *Id*.; ECF No. 12 at 7, ¶3, Petitioner's Reply.
[92] ECF No. 8 at 21, State's Response.

40

effectively and had no obligation to raise weaker arguments, even if meritorious.[93] The court further observed that, while the insufficient evidence claim was itself barred from review under La. Code Crim. P. art. 930.4(B), based on the facts outlined by the Louisiana Fifth Circuit on appeal, "a rational trier of fact could find all elements of second degree murder were present," citing *Jackson*, 443 U.S. at 307 and related state case law.[94]

The Louisiana Fifth Circuit also denied relief on this claim under *Strickland* finding that Hicks could show no prejudice from appellate counsel's actions because the court *sua sponte* reviewed the sufficiency of the evidence on direct appeal, even though it was not raised.[95] The court also noted that Hicks could have asserted sufficiency of the evidence when given leave to file a pro se supplemental appeal brief, but he did not file one.[96] The Louisiana Supreme Court also denied Hicks relief on this claim citing his failure to prove his claim under *Strickland*.[97]

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997). To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.

---

[93] ECF No. 9-2 at 133, Superceding Trial Court Order, 3/17/21.
[94] *Id*.
[95] ECF No. 9-7 at 167, 5th Cir. Order, 21-KH-217, 5/26/21.
[96] *Id*.
[97] *Id*. at 328-29, La. Sup. Ct. Order, 2021-KP-009, 12/6/22.

However, effective appellate counsel is not required to assert every nonfrivolous available ground for appeal. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts*, 469 U.S. at 394). On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).

Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to assert every conceivable issue. *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754. Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52. Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits the client because "a brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Id*. at 753. As a result, the test to be applied in assessing such a claim is whether the

issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. *See*, *e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *accord Smith*, 528 U.S. at 288.

Hicks has not met this burden. As an initial matter, the Louisiana Fifth Circuit indicated that as a matter of course, it would have reviewed the sufficiency of the evidence in his case when affirming his conviction. It is the norm for Louisiana appellate courts to review sufficiency as part of its errors patent review. *See State v. Ramos*, 310 So. 3d 826, 828 (La. App. 5th Cir. 2021) ("This Court routinely reviews the record for errors patent, including sufficiency of the evidence, in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); *State v. Raymo*, 419 So.2d 858, 861 (La. 1982)."); *State v. Turner*, 904 So. 2d 825, 829 (La. App. 5th Cir. 2005) ("Both the Louisiana Supreme Court and this Court have conducted patent error reviews of sufficiency of evidence, even where the defendant fails to raise the issue on appeal." (citations omitted)); *Preston v. Vannoy*, No. 18-KH-120, 2018 WL 3720068, at *2 (La. App. 5th Cir. Jun. 25, 2018) (denying ineffective assistance of appellate counsel claim because the court reviewed sufficiency of the evidence when affirming armed robbery and second degree murder convictions as part of its errors patent review on direct appeal even though not raised by appellate counsel).

Here, Hicks' conviction was affirmed, including a finding by the Louisiana Fifth Circuit, that the evidence was sufficient to support the verdict based on that court's review. As such, Hicks cannot establish that his counsel was ineffective or prejudicial in failing to raise a claim that would have been non-meritorious.

Furthermore, in his underlying claim of insufficient evidence, Hicks argues that it was irrational for the jury to give any credibility to the allegedly conflicted stories of two of the

eyewitnesses, Nakia Williams[98] and Kevin Phillips.[99]  Hicks suggests that the statements and testimony of these witnesses were irreconcilable, though he does not explain how.  He instead contends that "[o]nly Williams' testimony placed Petitioner at the scene; only Phillips had Payne actively shooting.  To believe Payne was engaged in the attack (via Phillips' tale) is to disbelieve Williams' version that Petitioner was present.  To believe Petitioner was involved (as per Williams' version) is to negate Phillips's testimony."[100]  However, this is not an accurate summary of the entirety of either witness's testimony and these conclusory statements do not demonstrate irreconcilability.  The mere use of the phrase "irrational" and substituting one's opinions for that of the jury is not the test for sufficiency of the evidence.

Instead, a court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.  As the Supreme Court explained:

> [T]his inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id*.  In addition, although a petitioner, like Hicks, claims no direct evidence supports his conviction, the fact that most of the evidence was circumstantial does not change the standard of review under *Jackson*.  *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991).

---

[98] Williams was the passenger in the victims' car who identified Payne's truck and both Payne and Hicks as involved in the shooting incident.

[99] Phillips while in his car saw Payne and his white truck at the scene.

[100] ECF No. 1-1, at 14, Memorandum in Support.

Under *Jackson*, a reviewing court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the factfinder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Under these standards, it is the *jury's responsibility* "*to resolve conflicts* in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319 (emphasis added). A reviewing court, therefore, must "presume - even if it does not appear in the record - that the trier of fact resolved any conflicts [in the evidence] in favor of the prosecution, *and must defer to that resolution*." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (emphasis added) (quoting *Jackson*, 443 U.S. at 326). Furthermore, under state and federal law, the testimony of a single witness if believed by the trier of fact, is sufficient to support a factual finding. *See State v. Higgins*, 898 So. 2d 1219, 1226 (La. 2005); *Cameron v. Vannoy*, No. 18-9502, 2020 WL 2520714, at *10 (E.D. La. May 18, 2020) ("Under both federal and Louisiana law, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the testimony of an eyewitness is generally sufficient to support a conviction.").

Hicks has not pointed to anything specific in the trial transcript in the nature of "irreconcilable" inconsistencies between the two witnesses, other than simply that one could identify both Hicks and Payne among the perpetrators and the other could identify Payne among

45

the perpetrators.  Neither witness excluded the possibility that both men were present and involved in the shooting.  The minor testimonial differences pointed out by Hicks were not mutually prohibitive to have compelled appellate counsel to raise the issue on appellate review. It is reasonable for eyewitnesses viewing an event from different vantage points to see and recall distinct parts of the same event.  Here, it was not irrational for the jury to conclude that Williams and Phillips recognized different men among the several perpetrators and had different perspectives of the events on August 12, 2012, which Hicks himself described as "a melee."[101]

Further, his appellate counsel may have recognized that reconciling any differences was in the province of the jury alone, and not to be second guessed by counsel or a reviewing court under the *Jackson* standards.  That reconciliation by the jury also would have included consideration of all of the evidence and testimony to reach the verdict and not just two of the many witnesses. Hicks has not established that the jury was "irrational" in resolving any suggested conflicts in the testimony or credibility of Williams or Phillips in light of the other trial evidence such that his appellate counsel was deficient or prejudicial in failing to assert the issue.

For all of the foregoing reasons, Hicks has not established that his appellate counsel was ineffective or prejudicial for failing to assert a claim of insufficient evidence on direct appeal, a claim he has not shown would have been meritorious under *Jackson*.  The Louisiana Fifth Circuit disclosed that it *sua sponte* reviewed the sufficiency of the evidence even though it was not asserted by Hicks's counsel.  That Court also determined that its affirmance of the conviction indicated that it had found the evidence sufficient to support the verdict.  Thus, Hicks cannot establish that his appellate counsel caused him any prejudice where he has not shown the claim would have been

---

[101] *Id*. at 14.

more meritorious than the claims raised or successful in any way in light of the state courts' *sua sponte* review.

Considering the doubly deferential AEDPA standards cited above, Hicks has not established that the Louisiana courts' denial of relief was contrary to or an unreasonable application of *Strickland* and its progeny. Hicks is not entitled to relief on this claim.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Jordan Hicks's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[102]

New Orleans, Louisiana, this 14th day of June, 2023.

_____
KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[102] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.